UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Signal Variety, Inc.,
d/b/a Signal Variety,
    Plaintiff

    v.                                     Case No. 15-cv-452-SM
                                            Opinion No. 2016 DNH 136
Patriot Insurance Company,
    Defendant

## O R D E R

In September of 2015, Signal Variety filed suit against Patriot Insurance Company in state court, seeking a declaratory judgment that, under the terms of an insurance policy issued to it by Patriot, Signal Variety is entitled to both a defense in, and coverage for any liability arising from, an underlying state tort action. Signal also sought damages for Patriot's alleged breach of that insurance policy. Patriot removed the case, invoking this court's diversity jurisdiction. Pending before the court are the parties' cross motions for summary judgment.

For the reasons discussed, Signal Variety's motion for partial summary judgment (on the coverage issue) is denied, and Patriot's motion for summary judgment is granted.

**Standard of Review**

I.  Summary Judgment.

When ruling on a motion for summary judgment, the court must "constru[e] the record in the light most favorable to the non-moving party and resolv[e] all reasonable inferences in that party's favor."  Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301 (1st Cir. 2014).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).  See also Nolan v. CN8, 656 F.3d 71, 76 (1st Cir. 2011).  Nevertheless, if the non-moving party's "evidence is merely colorable, or is not significantly probative," no genuine dispute as to a material fact has been proved, and "summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986) (citations omitted).

II. <u>Insurance Policy Coverage</u>.

In a declaratory judgment action to determine the scope of coverage provided by an insurance policy, "the burden of proof is always on the insurer, regardless of which party brings the petition." <u>Rivera v. Liberty Mut. Fire Ins. Co.</u>, 163 N.H. 603, 606 (2012). <u>See also</u> N.H. Rev. Stat. Ann. ("RSA") 491:22-a ("the burden of proof concerning the coverage shall be upon the insurer whether he institutes the petition or whether the claimant asserting the coverage institutes the petition."). Interpretation of an insurance policy's language "is a question of law for [the] court to decide." <u>Carter v. Concord General Mut. Ins. Co.</u>, 155 N.H. 515, 517 (2007). Moreover, "[i]f more than one reasonable interpretation is possible, and an interpretation provides coverage, the policy contains an ambiguity and will be construed against the insurer." <u>Cogswell Farm Condo. Ass'n v. Tower Group, Inc.</u>, 167 N.H. 245, 248 (2015).

Whether an insurer is obligated to defend its insured depends upon both the scope of coverage provided by the policy, and the nature of the underlying claim(s) against the insured. As the New Hampshire Supreme Court has noted:

> An insurer's obligation to defend its insured is determined by whether the cause of action against the

3

> insured alleges sufficient facts in the pleadings to
> bring it within the express terms of the policy.  In
> considering whether a duty to defend exists based on
> the sufficiency of the pleadings, we consider the
> reasonable expectations of the insured as to its
> rights under the policy.  An insurer's obligation is
> not merely to defend in cases of perfect declarations,
> but also in cases where, by any reasonable intendment
> of the pleadings, liability of the insured can be
> inferred, and neither ambiguity nor inconsistency in
> the underlying writ can justify escape of the insurer
> from its obligation to defend.  In cases of doubt as
> to whether the writ against the insured alleges a
> liability of the insurer under the policy, the doubt
> must be resolved in the insured's favor.

<u>Northern Sec. Ins. Co. v. Connors</u>, 161 N.H. 645, 650 (2011) (citations and internal punctuation omitted).

**Background**

In the fall of 2014, Noah Campbell was an employee of Signal Variety.  On November 1 of that year, he was driving an automobile in which Christopher Hall and Evan McLoughlin were passengers.  Campbell apparently lost control of the vehicle and struck a tree.  Hall and McLoughlin were injured as a result.

I.   <u>The Underlying State Court Action</u>.

In the wake of that accident, Hall and McLoughlin filed suit in Strafford County Superior Court against several defendants - including Signal Variety - seeking compensation for their injuries.  In their complaint, Hall and McLoughlin allege

the following facts that are material to the current coverage dispute:

    1.    On November 1, 2014, McLoughlin drove Hall and three other young men to Rochester, New Hampshire.  On the way, they telephoned Noah Campbell, who instructed them to meet him at the Signal Variety Store.  Campbell was, at that time, an employee of Signal Variety.

    2.    When the young men arrived at the store, Campbell came out from behind a dumpster and gave them a cardboard box containing four six-packs of wine coolers and hard lemonade.

    3.    Signal Variety "allowed" Campbell to take the alcoholic beverages from the store.

    4.    McLoughlin and the passengers in his car then drove to a house party in Rochester.  They arrived at approximately 9:00 PM and shared the alcohol with friends.

    5.    Campbell arrived at the party at 10:50 PM.  Very shortly thereafter, McLoughlin asked Campbell to drive him, Hall, and some friends to a local store.  Campbell agreed.

    6.    At approximately 11:10 PM, as Campbell was driving the young men from the store and back to the party, he lost control of his vehicle and struck a tree.

    7.    Rochester police officers responded to the scene and smelled alcohol on Campbell's breath.  Campbell admitted he had been drinking that evening.  He was charged with Aggravated Driving While Intoxicated.

    8.    That evening, Campbell had consumed alcohol he had obtained from Signal Variety.

    9.    At the time, Campbell was sixteen years old.

<u>See</u> Complaint, <u>Hall v. Campbell, et al.</u>, (document no. 1, exhibit 1) ("State Court Complaint").

5

In the underlying state court action, Hall and McLoughlin advance two claims against Signal Variety. The first is a claim under RSA 507-F:4, which provides that "a defendant who negligently serves alcoholic beverages to a minor . . . is liable for resulting damages." The second claim against Signal Variety asserts that: (1) Signal Variety "owed a duty to adhere to responsible business practices;" (2) it breached that duty and "allowed Noah Campbell access to alcohol which Campbell subsequently consumed and shared with other minors;" and (3) as a direct and proximate consequence of Signal Variety's breach of duty, Hall and McLoughlin were injured. See State Court Complaint at paras. 61-64.

II.  The Relevant Insurance Policy Language.

The insurance policy provides coverage to Signal Variety for "bodily injury," provided it is caused by an "occurrence." Patriot Insurance Policy (the "Policy"), Section II.A.1.b., at 36 of 57 (document no. 17-1). The Policy defines an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at Section II.F.13., 52 of 57.

The Policy, however, also contains a "Liquor Liability Exclusion," which exempts coverage for:

6

> "Bodily injury" or "property damage" for which any insured may be held liable by reason of:
>
>> (1) Causing or contributing to the intoxication of any person;
>>
>> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>>
>> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

The Policy at Section II.B.1.C., 39 of 57.

Patriot asserts that the Policy does not provide coverage for damages sought in the underlying state court action for several reasons, including that the Liquor Liability Exclusion specifically exempts coverage for the injuries plaintiffs sustained. Signal Variety, on the other hand, insists that the Policy provides coverage (and a defense) for both claims asserted against it.

**Discussion**

I. <u>Negligent Service of Alcoholic Beverages - RSA 507-F:4</u>.

In Count Three of the underlying State Court Complaint, Hall and McLoughlin seek to impose liability upon Signal Variety for "negligent service of alcoholic beverages" to a minor,

7

pursuant to RSA 507-F:4.  In support of that claim, Hall and McLoughlin allege that:

> On November 1, 2014, Campbell was an employee of Signal Variety, Inc.  At the time he was sixteen (16) years old. . . . Signal Variety <u>allowed him to take alcoholic beverages</u> from the store and deliver the alcohol to other underage individuals.
>
> Through information and belief, Campbell further consumed alcohol <u>obtained from</u> Signal variety.
>
> Thereafter, Campbell operated his motor vehicle under the influence of alcohol resulting in a serious motor vehicle accident.
>
> \* \* \*
>
> Accordingly, <u>pursuant to RSA 507-F:[4]</u>, Signal Variety is liable for the damages sustained by the Plaintiffs.

State Court Complaint, at paras. 54-58 (emphasis supplied).

The statute invoked by Hall and McLoughlin provides that, "A defendant who negligently serves alcoholic beverages to a minor . . . is liable for resulting damages."  RSA 507-F:4, I. It then defines "service" of alcohol to mean "any sale, gift, or other furnishing of alcoholic beverages."  RSA 507-F:1, IX.  The statute goes on to provide that service of an alcoholic beverage to a minor "is negligent if the defendant knows or if a reasonably prudent person in like circumstances would know that the person being served is a minor."  RSA 507-F:4, II.  Plainly, then, RSA 507-F:4 prescribes the relevant standard of care and

8

allows an injured party to recover damages from a defendant who negligently serves, sells, gives, or furnishes alcohol to a minor.  See generally Gauthier v. Manchester Sch. Dist., 168 N.H. 143, 147 (2015) (discussing the "roles a statutorily-prescribed standard of conduct may play in establishing civil liability").

Equally plain is that Count Three of the State Court Complaint seeks to impose liability upon Signal Variety "by reason of" that statute.  See Liquor Liability Exclusion, The Policy at Section II.B.1.C., 39 of 57.  That is to say, the underlying plaintiffs have brought a negligence claim against Signal Variety and are invoking the standard of care established by RSA 507-F:4.  Indeed, plaintiffs captioned the count, "Negligent Service of Alcoholic Beverages, RSA 507-F:4."

Whether plaintiffs have actually stated a viable cause of action against Signal Variety is unclear and, for purposes of this case, irrelevant.  What is important is that the underlying plaintiffs seek to hold Signal Variety liable "by reason of" a New Hampshire statute "relating to the sale, gift, distribution or use of alcoholic beverages."  The Policy, Section II.B.1.c.3, 39 of 57.  Coverage for the claim asserted in Count Three is,

therefore, excepted from the scope of the Policy under its Liquor Liability Exclusion provision.

II. <u>Negligence</u>.

In Count Four of their complaint, Hall and McLoughlin advance what appears to be a common law negligence claim against Signal Variety. In it, they allege the following:

> Signal Variety owed a duty to adhere to responsible business practices to include those policies, procedures and actions which an ordinary prudent business would follow in like circumstances.
>
> Signal variety breached its duty and allowed Noah Campbell <u>access to alcohol</u> which <u>Campbell subsequently consumed</u> and shared with other minors.
>
> As a direct and proximate result of the defendant's conduct Christopher Hall [and, presumably, Evan McLoughlin] has been damage[d].

State Court Complaint, at paras. 62-64 (emphasis supplied). In addition to alleging that Signal Variety "allowed Noah Campbell <u>access</u> to alcohol," the State Court Writ also alleges that Signal Variety "allowed [Campbell] <u>to take</u> alcoholic beverages from the store." <u>Id.</u> at para. 54 (emphasis supplied). Additionally, the complaint alleges that Campbell actually "consumed alcohol obtained from Signal Variety" (which, presumably caused or contributed to his impairment that evening). <u>Id.</u> at para. 55. <u>See also</u> <u>Id.</u> at para. 63. And,

10

finally, the complaint alleges that after obtaining and consuming the alcohol from Signal Variety, "Campbell operated his motor vehicle under the influence of alcohol, resulting in a serious motor vehicle accident." Id. at para. 56. See also Id. at para. 82 ("Noah Campbell caused a motor vehicle accident as a result of driving while being intoxicated.").

Patriot asserts that the claim(s) in Count Four of the underlying State Court Complaint unambiguously fall within the terms of the Liquor Liability Exclusion. In particular, Patriot says the state court plaintiffs seek to impose liability upon Signal Variety for "causing or contributing to the intoxication" of Noah Campbell. See The Policy at Section II.B.1.C.(1), 39 of 57. In others words, says Patriot, no matter how one interprets the negligence claim(s) asserted in Count Four, Signal Variety can only be liable if its wrongful conduct proximately caused Noah Campbell to become intoxicated to the point that his alcohol-induced impairment was causally related to the motor vehicle accident in which Hall and McLoughlin were injured.

Signal Variety counters that whether Campbell was "intoxicated" or merely "impaired" is an unknown, but outcome determinative, fact. By using the word "intoxication," Signal Variety argues, the Liquor Liability Exclusion contemplates "a

11

certain level of inebriation due to consuming alcoholic beverages" before the exclusion applies.  Signal Variety's Memorandum (document no. 18-1) at 7.  Consequently, says Signal Variety, "even if it is established that Noah Campbell had been drinking alcohol that night, this does not mean that he was 'intoxicated' so as to preclude coverage under the Policy."  Id. And, says Signal Variety, because Campbell's criminal case is still pending,[1] and because he has not yet been adjudged guilty of driving while intoxicated, it remains possible that he was merely "under the influence" of alcohol at the time of the accident, and not legally intoxicated.

As noted above, New Hampshire law provides that ambiguous language contained in an insurance policy must be interpreted to give effect to the "reasonable expectations of the insured." Connors, 161 N.H. at 650.  See also Bartlett v. Commerce Ins. Co., 167 N.H. 521, 531, 114 A.3d 724, 733 (2015).  But, even assuming that the Liquor Liability Exclusion's use of the word "intoxication" is ambiguous, Signal Variety's proposed construction is not reasonable.  Given the unmistakable Liquor Liability Exclusion in its policy, Signal Variety could not have plausibly believed Patriot's obligation to defend and indemnify

---

[1]  Campbell was charged with committing the offense of "aggravated driving while intoxicated."

12

would turn on whether the tort-feasor (Campbell) was inebriated beyond some legal limit of blood-alcohol content ("intoxicated"), or whether he was merely "impaired" by alcohol, or "buzzed," or "tipsy," or "woozy," or simply "under the influence" of alcohol. The distinction Signal Variety would draw between "intoxication" and "under the influence" does not seem reasonable. Indeed, the New Hampshire Supreme Court seems to have equated the term "intoxicated" with the phrase "under the influence" when interpreting a similar liquor liability exclusion. See New Hampshire Ins. Co. v. Hillwinds Inn, Inc., 117 N.H. 350, 351 (1977) (holding that liquor liability exclusion exempting coverage if insured "causes or contributes to the intoxication of any person" applied to preclude coverage where underlying writ alleged that insured "served alcoholic beverages to the customer, causing her to be under the influence thereof and thereby causing the accident.").[2] See also RSA 507-F:1 IV (defining "intoxication" to mean "an impairment of a

---

[2] It is probably worth noting that the liquor liability exclusion in Hillwinds also exempted coverage if liability was imposed on the insured by reason of "selling, serving, or giving of any alcoholic beverage to a person under the influence of alcohol," 117 N.H. at 351 (emphasis supplied) - language not present in the liability exclusion at issue in this case. But, given the factual allegations of the underlying complaint in Hillwinds (i.e., serving alcohol to a customer that "caused her to be under the influence thereof," rather than serving alcohol to a person already under the influence - as contemplated by that exclusion in the policy), it seems that the court equated the term "intoxicated" with the phrase "under the influence."

13

person's mental or physical faculties as a result of drug of alcoholic beverage use so as to diminish that person's ability to think and act in a manner in which an ordinary prudent and cautious person, in full possession of his faculties and using reasonable care, would act under like circumstances.").

But, it is not necessary to dwell on the proposed distinction, or to define precisely what is meant by the word "intoxication" as it is used in the Policy.  The underlying complaint plainly and unambiguously alleges that Noah Campbell was intoxicated, not merely inebriated, impaired, or under the influence of alcohol.  See, e.g., State Court Complaint at para. 82 ("Noah Campbell caused a motor vehicle accident as a result of driving while being intoxicated."); id. at para. 33 ("Noah Campbell was criminally charged with Aggravated Driving While Intoxicated, a felony currently pending in Strafford County."). It also alleges that, through its negligence (in whatever form it might have taken), Signal Variety "caused or contributed" to Campbell's intoxication.  See, e.g., Id. at para. 63 (alleging that Signal Variety "allowed Noah Campbell access to alcohol which Campbell subsequently consumed.").

It cannot be denied that the plaintiffs in the underlying state court action seek to impose liability on Signal Variety

14

for its having caused or contributed to Noah Campbell's intoxication, which resulted in their injuries. Consequently, the Liquor Liability Exclusion operates to preclude insurance coverage for the claim(s) advanced in Count Four of the State Court Complaint.

Parenthetically, the court notes that, as is the case with Count Three, it is not entirely clear whether Count Four of the State Court Complaint states a viable common law negligence claim against Signal Variety. The precise contours of Signal Variety's alleged duties are unspecified. Similarly, the State Court Complaint fails to describe the alleged breach, and does not articulate a clear causal connection between Signal Variety's alleged breach of its duties and the injuries sustained by Hall and McLoughlin. Perhaps the vagueness with which that claim was pled is intentional and represents an effort by plaintiffs to "artfully plead" around the Liquor Liability Exclusion and trigger coverage under the policy. But, many courts that have considered the scope and applicability of this (or a substantially similar) liquor liability exclusion have properly concluded that plaintiffs cannot circumvent the liability exclusion through creative pleading of their claims. When the claim - regardless of how it is pled or captioned - is "inexorably intertwined" with conduct that is plainly covered by

15

the exclusion, the exclusion applies.  See. e.g., State Auto. Mut. Ins. Co. v. Lucchesi, 563 Fed. Appx. 186, 189-90 (3d Cir. 2014); Colony Ins. Co. v. Events Plus, Inc., 585 F. Supp. 2d 1148, 1155 (D. Ariz. 2008); Prop.-Owners Ins. Co. v. Ted's Tavern, Inc., 853 N.E.2d 973, 982-83 (Ind. Ct. App. 2006).

Such is the case here.  Regardless of whether one interprets Count Four as advancing a claim for negligent failure to supervise, or negligent hiring, or negligent operation of a variety store, or negligent failure to adopt certain alcohol-related policies, or negligent failure to lock the beer cooler, or any similar claim, the underlying plaintiffs seek to impose liability for conduct or inaction that is inexorably intertwined with their assertion that Signal Variety somehow "caused or contributed to" Noah Campbell's intoxication on the night of the accident.  The Liquor Liability Exclusion plainly excepts coverage for such occurrences.

## Conclusion

For the foregoing reasons, the court concludes that the Liquor Liability Exclusion provisions of the insurance policy issued by Patriot Insurance Company to Signal Variety, Inc. excepts coverage for both claims asserted against Signal Variety in the underlying state court action.  Accordingly, Patriot's

16

motion for summary judgment (document no. 16) is granted, and Signal Variety's motion for partial summary judgment (document no. 18) is denied.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

August 12, 2016

cc:   William P. Rose, Esq.
      Richard E. Heifetz, Esq.
      Laura M. Gregory, Esq.
      Matthew J. Kennedy, Esq.
      Anthony J. Antonellis, Esq.